COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §§ 1983

VILLA JOHN D. JR.

C.D.C.R. # J38001

P.O. Box 7500

CRESCENT CITY, CA., 95532

FILED
MAR 1 3 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

(PR)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN DANIEL VILLA JR.,
  PLAINTIFF,
Vs.
LINDA ROWE, DOCTOR,
JENNIFER SWINEY, DOCTOR,
BHAWNA JAIN, DOCTOR,
CLAIRE WILLIAMS, DOCTOR,
VICKI FOWLER, REGISTERED NURSE,
AUGUSTE REALLON, REGISTERED NURSE,
SHIRLEY KEYS LICENSED, VOCATIONAL NURSE,
  DEFENDANTS

C 07   1436   WHA

CASE NO. _____

COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §§ 1983 AND DEMAND FOR JURY TRIAL.

I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

A. PLACE OF PRESENT CONFINEMENT: PELICAN BAY STATE PRISON (PBSP)

B. IS THERE A GRIEVANCE PROCEDURE IN THIS INSTITUTION? YES.

C. DID YOU PRESENT THE FACTS IN YOUR COMPLAINT FOR REVIEW THROUGH THE GRIEVANCE PROCEDURE? YES. HOWEVER, THIS COMPLAINT IS FILED AS A RESULT OF A CLEAR PATTERN OF WANTON AND OBDURANT ACTS WHICH AMOUNT TO DELIBERATE INDIFFERENCE TO PLAINTIFF'S SERIOUS MEDICAL NEEDS.

1.

1  Due to this complaint involving numerous acts and incidents, all of which occured
2  at different times, and were appealed at different times. One appeal has been
3  fully exhausted to the highest level available. The appeal number is: P06-01719.
4  The results at each level are as follows: Informal level: Partially granted. Formal
5  Level: Partially granted. Second level: Partially granted. Directors level: Denied.
6  Another appeal was exhausted to the highest level available. The appeal number is:
7  S06-02270. The results at each level are as follows: Informal level: Partially
8  granted. Formal level: Granted. Second level: Partially granted. Directors level:
9  Denied.
10  A third appeal has been exhausted, and granted, at the highest level available
11  at the prison, but not pursued to the directors level. The appeal number is:
12  A06-03072. The results at each level are as follows: Informal level:
13  Bypassed. Formal level: Denied. Second level: Granted.
14  Other appeals related to the facts contained within this complaint remain
15  under review at the directors level, the highest level of review.
16  Plaintiff is ignorant to the law and civil procedure and, asks this court
17  for permission to proceed, while all other inmate appeals go through the
18  remaining level of review.
19  Plaintiff makes this request in order to conform with statute of
20  limitations and, due to on going acts of deliberate indifference to serious
21  medical needs as recently as February, 2007.
22  II. PARTIES
23  PLAINTIFF,
24  JOHN VILLA # J33001
25  P.O. BOX 7500
26  CRESCENT CITY, CA.
27    95532
28

1. LINDA ROWE, DOCTOR, PELICAN BAY STATE PRISON (PBSP), DEFENDANT
2. JENNIFER SWINEY, DOCTOR, PBSP, DEFENDANT
3. BHAWNA JAIN, DOCTOR, PBSP, DEFENDANT
4. VICKI FOWLER, NURSE, PBSP, DEFENDANT
5. AUGUSTE REALLON, NURSE, PBSP, DEFENDANT
6. CLAIRE WILLIAMS, DOCTOR, PBSP, DEFENDANT
7. SHIRLEY KEYS, NURSE, PBSP, DEFENDANT

STATEMENT OF CLAIM

VENUE / JURISDICTION

DEFENDANTS ARE RESIDENTS OF CALIFORNIA AND CITIZENS OF THE UNITED STATES OF AMERICA. THE EVENTS GIVING RISE TO THIS ACTION OCCURED IN DEL NORTE COUNTY, CRESCENT CITY, CA.. VENUE IS THEREFORE PROPER UNDER 28 U.S.C. SEC. 1391(b). JURISDICTION OF THIS COURT IS PREDICATED ON 28 U.S.C. SEC. 1331 AND 1343.

COLOR OF STATE LAW

DEFENDANTS WERE, AT ALL TIMES MENTIONED IN THIS COMPLAINT, EMPLOYED BY THE STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR). DEFENDANTS WERE, AT ALL TIMES MENTIONED IN THIS COMPLAINT, ACTING IN THE COURSE AND SCOPE OF THEIR EMPLOYMENT FOR THE CDCR. DEFENDANTS WERE, AT ALL TIMES MENTIONED IN THIS COMPLAINT, ACTING UNDER COLOR OF STATE LAW.

CAPACITIES

DEFENDANTS ARE BEING SUED IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES.

FACTS

I.

1. PLAINTIFF JOHN VILLA IS A STATE PRISONER HOUSED AT PELICAN BAY STATE PRISON (PBSP)

2. PLAINTIFF HAS BEEN IN THE CUSTODY OF THE C.D.C.R. SINCE 1994, SERVING

1. A SENTENCE OF 20 TO LIFE FOR SECOND DEGREE MURDER.

3. PLAINTIFF HAS A HISTORY OF HIGH CHOLESTEROL, HYPERTENSION, HEART ARRHYTHMIA, AND A FAMILY HISTORY OF HEART DISEASE.

4. PLAINTIFF HAS BEEN IN THE C.D.C.R. "CHRONIC CARE" PROGRAM SINCE 1995, FOR HIS CARDIAC ISSUES.

5. "CHRONIC CARE" INMATES ARE TO BE SEEN BY A PHYSICIAN ON A ROUTINE BASIS.

6. ON APPROXIMATELY 7-19-2005, PLAINTIFF ARRIVED AT PELICAN BAY STATE PRISON (PBSP) FROM NEW FOLSOM PRISON (CSP-SAC.).

7. AFTER PLAINTIFF'S ARRIVAL TO PBSP, HE WAS SEEN BY DEFENDANT DR. LINDA ROWE, FOR INTAKE TO THE PBSP "CHRONIC CARE PROGRAM."

8. PLAINTIFF EXPLAINED TO DEFENDANT DR. ROWE THAT, HE HAD PREVIOUSLY BEEN ON MEVACOR, A "STATIN" DRUG, WHILE AT PBSP, FROM 1999 TO 2000, FOR TREATMENT OF HIS HIGH-CHOLESTEROL.

9. WHILE ON THE "STATIN" DRUG MEVACOR, PLAINTIFF SUFFERED WITH ABDOMINAL PAIN, AND PAIN IN HIS RIGHT SIDE/LIVER AREA.

10. ON 12-31-00, PLAINTIFF WAS EVALUATED BY A DOCTOR FOR HIS ABDOMINAL AND LIVER AREA PAINS.

11. PLAINTIFF WAS TOLD AT THAT EVALUATION, NOT TO TAKE "STATIN" DRUGS ANY LONGER.

12. PLAINTIFF FURTHER EXPLAINED TO DEFENDANT DR. ROWE THAT, DUE TO HIS BODY'S INABILITY TO TOLERATE "STATIN" DRUGS, DOCTORS AT NEW FOLSOM (CSP-SAC), WERE EFFECTIVELY TREATING HIS HIGH-CHOLESTEROL WITH 500 mg. OF NIACIN TWICE DAILY.

13. PLAINTIFF ASKED DEFENDANT DR. ROWE, TO CONTINUE HIM ON THE NIACIN.

14. DEFENDANT DR. LINDA ROWE, UNDER COLOR OF STATE LAW, ACTED WITH WANTONNESS AND DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS OF PLAINTIFF JOHN VILLA, BY REFUSING TO CONTINUE PLAINTIFF'S NIACIN AND, REFUSAL TO ORDER ANY FORM OF TREATMENT OR THERAPY FOR HIS HIGH

CHOLESTEROL.

15. In approximately Oct. 2005, plaintiff, worried about his cholesterol, asked Dr. Yancha, prison psychiatrist, to order blood tests.

16. In approximately Feb. 2006, plaintiff filed an inmate grievance due to PBSP medical staff's failure to draw and test his blood.

17. On approximately 3-29-06 and 3-30-06, plaintiff's blood was drawn. The results showing that plaintiff's cholesterol level rose from approximately 217 to 297, and triglycerides rose from 179 to 340, placing plaintiff at an above-average cardiac risk factor level.

18. Defendant Dr. Linda Rowe's wanton interference with the prescribed treatment of a diagnosed, serious medical condition and, deliberate indifference are the proximate cause of plaintiff's elevated cardiac risk factor level.

19. Defendant Dr. Linda Rowe's wanton and obdurant refusal to offer plaintiff John Villa any form of treatment or therapy for his high-cholesterol are the proximate cause of plaintiff's elevated cardiac risk factor level.

20. On approximately 4-12-06, plaintiff was seen by defendant Dr. Jennifer Swiney, in response to the results of the blood tests as described in paragraph #17.

21. At this initial meeting with defendant Dr. Jennifer Swiney, plaintiff explained to defendant Jennifer Swiney, his medical history and treatments in regards to his high-cholesterol.

22. Plaintiff made it clear that he could not take "statins", and wanted to be placed on niacin.

23. This information was also contained in plaintiff's medical file.

24. Defendant Dr. Jennifer Swiney, under color of state law, acted with wantonness, obduracy, and deliberate indifference to plaintiff's documented medical history, and ordered plaintiff to take "lipitor" a "statin" drug.

25. Plaintiff began to experience pain, discomfort, constant gas, and bloating as a direct result of being placed on Lipitor.

26. On approximately 4-19-06, plaintiff was seen by defendant Dr. Bhawna Jain.

27. At his initial meeting with defendant Dr. Bhawna Jain, plaintiff complained of those symptoms as described in paragraph #25.

28. Plaintiff explained to defendant Dr. Bhawna Jain, what his prior history and treatments were regarding his high cholesterol. Plaintiff asked defendant Dr. Jain to discontinue the Lipitor and place him back on 500 mg. Niacin twice daily.

29. Defendant Dr. Jain, acting under color of state law, ordered plaintiff to continue taking the Lipitor, "atleast" until blood tests could be done in, "a couple of days."

30. Defendant Dr. Jain advised plaintiff to notify medical staff if he continued to have symptoms, or, if his symptoms worsened, and, he would be evaluated.

31. On approximately 4-25-06, plaintiff sent defendant, Nurse Vicki Fowler, a written complaint of problems he was experiencing.

32. Instead of responding and evaluating plaintiff, or, having plaintiff meet with a physician, defendant Fowler sent plaintiff a written response, telling him that he'd be seen by the doctor that week.

33. By approximately 4-27-06, plaintiff's symptoms had worsened as his hands and feet became swollen, he had constant pain and discomfort in his stomach and right side / liver area.

34. On the morning of 4-27-06, defendant Nurse Fowler entered the plaintiff's housing section to speak with an inmate Gonzalez (2) two cells from the plaintiff's cell.

35. Plaintiff asked defendant Fowler if she could come to his cell,

1. As he needed to see her.

36. Defendant Nurse Fowler refused to see plaintiff, eventhough she had knowledge of plaintiffs suffering.

37. As Defendant Fowler was leaving the Plaintiffs Housing Section, plaintiff yelled out of his cell door, to Defendant Fowler, telling her that he could not tolerate the Lipitor and would no longer take it.

38. Defendant Nurse Vicki Fowler, under color of state law, acted with wantonness and obduracy in denying the plaintiff medical attention twice, as described in paragraphs 31 through 37.

39. The plaintiff, John Villa, was forced to suffer stomach pain, discomfort, and bloating as a direct result of the deliberate indifference of defendants Dr's Jain, and Swiney, as well as Nurse Fowler.

40. Approximately 6 days after the plaintiff stopped taking the Lipitor, his blood was drawn for testing.

41. The results of those tests show that the plaintiff did suffer some damage to his liver.

42. The proximate cause of this damage was the result of those actions as described in paragraphs 8 through 38.

43. In approximately May, 2006, defendant Dr. Jain started plaintiff on Niacin.

44. Defendant Dr. Jain placed the plaintiff on 1000 mg of Niacin (2) two times daily. A dose twice that which plaintiff had previously taken.

45. As a direct result of the increase in Niacin, plaintiff began to break out in hives, and uncontrollable itching, lasting hours.

46. This reaction began to occur on a frequent, almost daily basis.

47. Unable to tolerate with these reactions, plaintiff sought medical attention.

48. On approximately 8-19-06, plaintiff was evaluated by Nurse

KIRKPATRICK.

49. NURSE MR. KIRKPATRICK CONTACTED AN UNIDENTIFIED DOCTOR, BY PHONE, AND DESCRIBED THE PLAINTIFFS SYMPTOMS.

50. THIS UNIDENTIFIED DOCTOR ORDERED THE PLAINTIFF TO IMMEDIATELY STOP TAKING THE NIACIN AND, WAS TOLD HE WOULD BE EVALUATED BY A DOCTOR ABOUT THE REACTIONS ON 8-24-06.

51. DEFENDANT DR. JAIN DID NOT SEE THE PLAINTIFF UNTIL 9-19-06, (30) THIRTY DAYS, OF WHICH HE WAS LEFT WITHOUT ANY TREATMENT FOR HIS HIGH CHOLESTEROL.

52. AT THE 9-19-06 MEETING, DEFENDANT DR. JAIN TOLD PLAINTIFF THAT SHE WAS PRESCRIBING "ZOCOR", A "STATIN" FOR HIS CHOLESTEROL.

53. THE PLAINTIFF EXPRESSED HIS FEAR OF SUFFERING THROUGH ANOTHER STATIN DRUG WHEN, DEFENDANT DR. JAIN WAS AWARE OF THE COMPLICATIONS PLAINTIFF EXPERIENCED WITH (2) TWO OTHER "STATINS".

54. THE PLAINTIFF ARGUED AGAINST THE PRESCRIPTION OF ANOTHER STATIN, BUT, DEFENDANT DR. JAIN MADE IT CLEAR THAT PLAINTIFF WOULD HAVE TO TAKE THE ZOCOR OR, RECEIVE NO TREATMENT.

55. THE PLAINTIFF WAS FORCED TO TAKE THE ZOCOR AND, FROM THE FIRST DAY, SUFFERED WITH PAIN AND BLOATING IN HIS STOMACH.

56. DAYS AFTER STARTING THE ZOCOR, PLAINTIFF TOLD DEFENDANT NURSE AUGUSTE REALLON THAT, "THE ZOCOR IS TEARING MY STOMACH UP."

57. DEFENDANT NURSE REALLON, UNDER COLOR OF STATE LAW, ACTED WITH WANTONNESS AND DELIBERATE INDIFFERENCE BY FAILING TO EVALUATE PLAINTIFF OR, HAVE THE PLAINTIFF CHECKED OUT BY A PHYSICIAN.

58. DEFENDANT REALLON, AWARE OF PLAINTIFFS PREVIOUS PROBLEMS WITH STATINS, SIMPLY ORDERED A PRESCRIPTION OF ANTACIDS FOR PLAINTIFF.

59. WITHIN DAYS, PLAINTIFFS SYMPTOMS WORSENED. THE PLAINTIFF BEGAN SUFFERING WITH MUSCLE PAIN AND WEAKNESS IN HIS LEGS. A POTENTIALLY

1  DANGEROUS SIDE EFFECT OF STATIN DRUGS.

2  60. ON APPROXIMATELY 11-12-06, THE PLAINTIFF FILED A MEDICAL REQUEST FORM SEEKING MEDICAL ATTENTION DUE TO THE SYMPTOMS HE WAS EXPERIENCING, AND, THE DENIAL OF MEDICAL ATTENTION BY DEFENDANT REALLON.

3  61. DEFENDANT DR. BHAWNA JAIN FORCED PLAINTIFF TO ENDURE PAIN AND SUFFERING, AS WELL AS DENIAL OF MEDICAL ATTENTION BY THOSE ACTIONS AS DESCRIBED IN PARAGRAPHS 43 THROUGH 60.

4  62. DEFENDANT NURSE AUGUSTE REALLON FORCED PLAINTIFF TO ENDURE PAIN AND SUFFERING, AND DENIED THE PLAINTIFF MEDICAL TREATMENT AS DESCRIBED IN PARAGRAPHS 56 THROUGH 60.

## II.

63. IN APPROXIMATELY OCT. 2006, PLAINTIFF'S LEFT EYE BECAME INFECTED AND, PLAINTIFF COMPLAINED TO MEDICAL STAFF.

64. DEFENDANT REALLON REFUSED TO EVALUATE, OR EVEN HAVE A PHYSICIAN EVALUATE PLAINTIFF'S EYE, EVEN WHEN THE EYE HAD SWOLLEN SHUT.

65. ON THE MORNING OF 10-5-06, PLAINTIFF CALLED CORRECTIONAL OFFICER (c/o) WILCOX TO HIS CELL FOR HELP.

66. C/O WILCOX CAME TO THE PLAINTIFF'S CELL, SAW PLAINTIFF'S EYE SWOLLEN SHUT AND BLEEDING AND, MADE THE DECISION TO TAKE THE PLAINTIFF TO BE EVALUATED BY MEDICAL ON AN EMERGENCY BASIS.

67. ON 10-5-06, DEFENDANT DR. JAIN PLACED PLAINTIFF ON AN ANTIBIOTIC OINTMENT.

68. ON THE MORNING OF 10-12-06, PLAINTIFF WOKE UP WITH AN INFECTION IN HIS LEFT NOSTRIL.

69. ON 10-13-06, DEFENDANT REALLON WENT TO PLAINTIFF'S CELL IN ORDER TO FOLLOW-UP ON THE EYE INFECTION.

70. WHEN DEFENDANT REALLON SHOWED UP AT THE PLAINTIFF'S CELL, THE PLAINTIFF INFORMED DEFENDANT REALLON ABOUT THE INFECTION IN HIS NOSE.

71. PLAINTIFF'S NOSTRIL ON THE LEFT SIDE, AND, HIS UPPER LIP WERE SWOLLEN

1. AND CAUSING THE PLAINTIFF ALOT OF PAIN FOR 2 DAYS.
2. 72. PLAINTIFF LET DEFENDANT REALLON KNOW THAT HE WAS HAVING THESE PROBLEMS AND, ASKED FOR MEDICAL ATTENTION.
3. 73. DEFENDANT NURSE REALLON REFUSED TO TREAT PLAINTIFF, OR, HAVE HIM SEEN BY A PHYSICIAN.
4. 74. BY THE EVENING OF 10-13-06, THE ENTIRE LEFT SIDE OF THE PLAINTIFFS FACE, FROM THE LEFT EYE TO NECK, HAD SWELLED UP WITH ABSESSES.
5. 75. FOR (3) THREE DAYS, THE PLAINTIFF WAS LEFT TO SUFFER EXCRULIATING PAIN, HEADACHE, PROBLEMS EATTING AND, COULDN'T SLEEP.
6. 76. DEFENDANT NURSE SHIRLEY KEYS, WORKED THE EVENING SHIFT AND, BROUGHT THE PLAINTIFF HIS MEDICATION NIGHTLY.
7. 77. THE PLAINTIFF ASKED DEFENDANT KEYS FOR MEDICAL ATTENTION REPEATEDLY.
8. 78. ON 10-16-06, SOLELY THROUGH THE HELP OF MEDICAL TECHNICAL TECHNICIAN VICTORIO GOROSPE, AND, PSYCH. TECHNICIAN SHERRY LATHAM, PLAINTIFF WAS SEEN BY DEFENDANT REALLON FOR EVALUATION.
9. 79. DEFENDANT REALLON, SEEING THE CONDITION OF PLAINTIFF, SENT HIM TO THE CORRECTIONAL TREATMENT CENTER TO BE SEEN BY A DOCTOR.
10. 80. DELIBERATELY INDIFFERENT TO THE PLAINTIFFS PAIN AND SUFFERING, PLAINTIFF WAS FORCED TO WALK APPROXIMATELY ONE MILE TO SEE THE DOCTOR.
11. 81. PRISONERS ARE USUALLY DRIVEN BY BUS, OR VAN, TO THE CORRECTIONAL TREATMENT CENTER, (CTC).
12. 82. WHEN THE PLAINTIFF ARRIVED AT THE C.T.C., HE WAS SEEN BY AN UNIDENTIFIED MALE DOCTOR, WHO TOLD PLAINTIFF THAT HE WAS SUFFERING FROM "MRSA" INFECTION.
13. 83. THIS UNIDENTIFIED DOCTOR ASKED THE PLAINTIFF WHAT ALLERGIES HE HAD.
14. 84. PLAINTIFF TOLD THE DOCTOR THAT HE WAS ALLERGIC TO PENECILLIN AND, "SULPHA" DRUGS.
15. 85. THIS DOCTOR GAVE PLAINTIFF (2) TWO PILLS TO TAKE, ATLEAST ONE OF WHICH

1 WAS A "SULPHA" DRUG CALLED "BACTRIM."

86. PLAINTIFF WAS FORCED TO ENDURE AN ALLERGIC REACTION.

87. EVENTHOUGH THE PLAINTIFF WAS DIAGNOSED AS HAVING A "MRSA" INFECTION, PLAINTIFF WAS DENIED DAILY SHOWERS, LINEN EXCHANGE OR, CLOTHING EXCHANGE, WHICH IS A VIOLATION OF PBSP "MRSA" PRECAUTIONS.

88. PLAINTIFF WAS DENIED SHOWERS FOR 5 DAYS.

89. DEFENDANT DR. CLAIRE WILLIAMS, UNDER COLOR OF STATE LAW, HAS FILED DOCUMENTS IN PLAINTIFFS MEDICAL FILE, CLAIMING TO HAVE BEEN THE DOCTOR WHO TREATED AND EVALUATED PLAINTIFF ON 10-16-06.

90. THOSE DOCUMENTS ARE INTENTIONALLY FALSE AS, PLAINTIFF WAS SEEN BY A MALE DOCTOR.

91. DEFENDANT NURSES REALLON AND KEYS, ACTING UNDER COLOR OF STATE LAW, ACTED WITH WANTONNESS AND DELIBERATE INDIFFERENCE BY DENYING PLAINTIFFS REQUEST FOR MEDICAL ATTENTION.

92. AS A RESULT, PLAINTIFF WAS DENIED MEDICAL TREATMENT OF A SERIOUS MEDICAL NEED, AND, FORCED TO SUFFER EXCRUCIATING PAIN, LACK OF SLEEP AND HEADACHE.

### III.

93. ON 8-19-05, DEFENDANT DR. LINDA ROWE FOUND PLAINTIFF TO HAVE AN EAR INFECTION IN HIS RIGHT EAR.

94. THE PLAINTIFF, JOHN VILLA, COMPLAINED OF DIZZINESS, PRESSURE IN HIS RIGHT EAR, AND ASKED FOR TREATMENT.

95. DEFENDANT DR. ROWE TOLD PLAINTIFF HE NEEDED TO RETURN TO HIS CELL AND, FILL OUT A MEDICAL REQUEST FORM, AND, HE'D BE PLACED ON "SICK CALL".

96. DUE TO FAILURES TO PROPERLY TREAT, OR DENIAL OF TREATMENT BY DEFENDANTS DR'S ROWE, SWINEY, JAIN, PLAINTIFF WAS FORCED TO ENDURE AN INFECTION OF HIS RIGHT EAR FOR A YEAR.

11.

(12)

97. DURING THAT YEAR, PLAINTIFF SUFFERED WITH PAIN, DIZZINESS, RINGING EAR, AND SOME HEARING IMPAIRMENT AS HIS EAR DRUM CEASED TO MOVE.

IV. RELIEF

1. PLAINTIFF REQUESTS A JURY TRIAL. 2. PLAINTIFF SEEKS JUDGEMENT OF FIFTY THOUSAND DOLLARS IN COMPENSATORY DAMAGES FROM EACH INDIVIDUAL DEFENDANT. 3. PLAINTIFF SEEKS JUDGEMENT OF ONE-HUNDRED THOUSAND DOLLARS IN PUNITIVE DAMAGES FROM EACH INDIVIDUAL DEFENDANT. 4. FOR DEFENDANTS TO PAY FOR COST OF SUIT. 5. FOR SUCH OTHER RELIEF AS THE COURT DEEMS JUST.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT, TO THE BEST OF MY KNOWLEDGE.

SIGNED THIS 27th DAY OF FEBRUARY, 2007

_John Villa_
PLAINTIFF.

John Villa F38904
P.O. Box 7500
Crescent City, CA. 95532
Plaintiff In Pro Se.

United States District Court
Northern District Of California

John Daniel Villa Jr,)
Plaintiff. )
vs. ) Case No. _____
Linda Rowe, ) Motion For The Appointment
Et. Al., ) Of Counsel
Defendants. )

Plaintiff John Villa, Pursuant To §1915, Asks This Court To Request The Appointment Of Counsel To Represent Him In This Case For The Following Reasons:

1. This Case Involves A Large Number Of Defendants Who Will Need To Be Deposed.

2. The Issues Involved In This Case Are Complex, And Will Need Expert Witness Testimony.

3. The Plaintiff, As A Segregation Inmate, Has Extremely Limited Access To The Law Library.

4. The Plaintiff Has A Limited Knowledge Of The Law.

5. The Plaintiff Is Unable To Afford Counsel.

1.

1  I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND
2  CORRECT, TO THE BEST OF MY KNOWLEDGE.

4  SIGNED THIS ___27th___ DAY OF ___FEBRUARY___ 2007.

JOHN DANIEL VILLA JR. #J38001
P.O. BOX 7500
CRESCENT CITY, CA. 95532
PLAINTIFF IN PRO SE.

2.

JOHN D. VILLA JR. #P-8001
P.O. BOX 7500
CRESCENT CITY, CA. 95532
PLAINTIFF IN PRO SE.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOHN DANIEL VILLA JR.   )
PLAINTIFF.              )           CASE NO. _____
Vs.                     )
LINDA ROWE              )
ET. AL.,                )
DEFENDANTS.             )

DECLARATION IN SUPPORT OF THE PLAINTIFFS MOTION FOR THE APPOINTMENT OF COUNSEL.

JOHN VILLA DECLARES, UNDER PENALTY OF PERJURY:

1. I AM THE PLAINTIFF IN THE ABOVE ENTITLED. I MAKE THIS DECLARATION IN SUPPORT OF MY MOTION FOR THE APPOINTMENT OF COUNSEL.

2. THE COMPLAINT IN THIS CASE ALLEGES THAT THE PLAINTIFF WAS SUBJECTED TO PAIN, DISCOMFORT, SUFFERING, AND ELEVATED CARDIAC RISK FACTOR LEVEL, AS THE RESULT OF A CLEAR PATTERN OF DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS, IN VIOLATION OF THOSE PROTECTIONS AS PROSCRIBED BY THE UNITED STATES CONSTITUTION, EIGHTH AMEND.. AND, THAT THE REPEATED ACTS OF DELIBERATE INDIFFERENCE INVOLVED SEVERAL PRISON DOCTORS AND NURSES.

3. THIS CASE IS COMPLEX BECAUSE IT CONTAINS SEVERAL DIFFERENT INCIDENTS

1.

1. INVOLVING NUMEROUS DEFENDANTS.

2. 4. THIS CASE INVOLVES MEDICAL ISSUES THAT WILL REQUIRE EXPERT TESTIMONY.

3. 5. THE PLAINTIFF HAS DEMANDED A JURY TRIAL.

4. 6. THIS CASE WILL REQUIRE DISCOVERY OF DOCUMENTS AND DEPOSITIONS OF A NUMBER OF WITNESSES.

5. 7. THE TESTIMONY WILL BE IN SHARP CONFLICT, SINCE THE PLAINTIFF ALLEGES THAT HE SUFFERED NUMEROUS ACTS OF DELIBERATE INDIFFERENCE AT THE HANDS OF THE DEFENDANTS, WHILE THE DEFENDANTS IN THEIR RESPONSES TO PLAINTIFF'S INMATE APPEALS (MARKED AS EXHIBITS A AND B) ASSERT THAT THE PLAINTIFF RECEIVED ADEQUATE MEDICAL CARE AND, THAT THE 5 DAY DENIAL OF SHOWERS WHILE INFECTED WITH THE POTENTIALLY FATAL "MRSA" INFECTION, WAS NOT A VIOLATION OF PLAINTIFF'S RIGHTS.

6. 8. THE PLAINTIFF HAS ONLY A G.E.D. EDUCATION.

7. 9. THE PLAINTIFF IS SERVING A SENTENCE IN ADMINISTRATIVE SEGREGATION. FOR THIS REASON HE HAS VERY LIMITED ACCESS TO LEGAL MATERIALS AND HAS NO ABILITY TO INVESTIGATE THE FACTS OF THE CASE, FOR EXAMPLE, BY LOCATING AND INTERVIEWING THE OTHER INMATES WHO WERE WITNESSES TO THE PLAINTIFF BEING IGNORED AND DENIED MEDICAL ATTENTION.

8. 10. AS SET FORTH IN THE MEMORANDUM OF LAW SUBMITTED WITH THIS MOTION, THESE FACTS, ALONG WITH THE LEGAL MERIT OF THE PLAINTIFF'S CLAIMS, SUPPORT THE REQUEST OF THE APPOINTMENT OF COUNSEL TO REPRESENT THE PLAINTIFF.

WHEREFORE, THE PLAINTIFF'S MOTION FOR THE APPOINTMENT OF COUNSEL SHOULD BE GRANTED.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT, TO THE BEST OF MY KNOWLEDGE.

SIGNED THIS ___27th___ DAY OF ___FEBRUARY___ 2007.

*John Daniel Villa Jr. #J38001*

body could not tolerate. Defendant Dr. Bhawna Jain wantonly ignored the plaintiffs complaints and medical history by continuing plaintiff on the drug (Lipitor) prescribed by Dr. Swiney, even after plaintiff complained of adverse reactions. Defendant Nurse Vicki Fowler denied plaintiff medical attention on (2) two occasions. Defendant Nurse Auguste Reallon repeatedly denied the plaintiff medical attention, and wantonly refused to schedule doctors visits. Defendant Nurse Shirley Keys denied plaintiff medical attention. Defendant Dr. Claire Williams intentionally filed false reports in plaintiffs medical file. As the direct result of defendants deliberate indifference, plaintiff suffered excruciating pain, discomfort, dizziness, uncontrollable itching, allergic reaction, bloating, gas, elevated cardiac risk factor levels, some impaired hearing, and, some liver damage.

## ARGUEMENT

### THE COURT SHOULD APPOINT COUNSEL FOR THE PLAINTIFF

In deciding whether to appoint counsel for an indigent litigant, the court should consider "the factual complexity of the case, the ability of the indigent to investigate the facts, the existence of conflicting testimony, the ability of the indigent to present his claim and the complexity of the legal issues." ABDULLAH V. GUNTER, 949 F.2d 1032, 1035 (8th Cir. 1991) (citation omitted), cert. denied, 112 S.Ct. 1995 (1992) In addition, courts have suggested that the most important factor is whether the case appears to have merit. COOPER V. SARGENTI CO., INC., 877 F.2d 170, 173 (2d Cir. 1989) Each of those factors weighs in favor of appointing counsel in this case.

1. FACTUAL COMPLEXITY. The plaintiff alleges that several prison doctors and nurses forced him to endure pain and suffering by failing to properly treat him, and denying him medical attention. The sheer number of deliberately

2.

1  INDIFFERENT ACTS, AND DEFENDANTS, MAKES THIS A FACTUALLY COMPLEX CASE.
2  IN ADDITION, IT WILL BE NECESSARY TO PRESENT A MEDICAL EXPERT WITNESS, AND,
3  TO CROSS EXAMINE THE MEDICALLY TRAINED DEFENDANTS AND, ANY MEDICAL
4  WITNESSES THEY MAY CALL. THE PRESSENCE OF MEDICAL OR OTHER ISSUES
5  REQUIRING EXPERT TESTIMONY SUPPORTS THE APPOINTMENT OF COUNSEL. MOORE V.
6  MABUS, 976 F.2d 268, 272 (5th Cir. 1992); JACKSON V. COUNTY OF McLEAN, 953
7  F.2d 1070, 1073 (7th Cir. 1992); TUCKER V. RANDALL, 948 F.2d 388, 392
8  (7th Cir. 1991)
9     2. THE PLAINTIFFS ABILITY TO INVESTIGATE. THE PLAINTIFF IS LOCKED UP IN
10 ADMINISTRATIVE SEGREGATION AND HAS NO ABILITY TO INVESTIGATE THE FACTS.
11 HE IS IN THE SAME SITUATION AS AN INMATE WHO HAS BEEN TRANSFERRED TO A
12 DIFFERENT INSTITUTION, A FACTOR THAT SEVERAL COURTS HAVE CITED IN
13 APPOINTING COUNSEL. TUCKER V. RANDALL, SUPRA.; GATSON V. COUGHLIN, 679
14 F.Supp. 270, 273 (W.D.N.Y. 1988); ARMSTRONG V. SNYDER, 103 F.R.D. 96,
15 105 (E.D. Wis. 1984). IN ADDITION, THIS CASE WILL REQUIRE CONSIDERABLE
16 DISCOVERY CONCERNING THE IDENTITY OF WITNESSES, MEDICAL REPORTS AND
17 STATEMENTS. THE HISTORY OF THE DOCTORS AND NURSES WITH PRIOR RECORDS,
18 AND INMATE APPEALS ALLEGING DENIAL OF MEDICAL ATTENTION AND
19 DELIBERATE INDIFFERENCE. SEE TUCKER V. DICKEY, 613 F.Supp. 1124, 1133-
20 34 (W.D. Wis. 1985) (NEED FOR DISCOVERY SUPPORTED APPOINTMENT OF
21 COUNSEL).
22    3. CONFLICTING TESTIMONY. THE PLAINTIFFS ACCOUNT OF THE DENIAL OF,
23 AND/OR, INADEQUACY OF MEDICAL ATTENTION AND WANTON DELIBERATE
24 INDIFFERENCE, IS IN CONFLICT WITH DEFENDANTS STATEMENTS WITHIN
25 THE INMATE APPEALS. THIS ASPECT OF THE CASE WILL BE A CREDIBILITY CONTEST
26 BETWEEN THE DEFENDANTS AND THE PLAINTIFF (AND SUCH INMATE
27 WITNESSES AS CAN BE LOCATED). THE EXISTENCE OF THESE CREDIBILITY
28 ISSUES SUPPORTS THE APPOINTMENT OF COUNSEL. GATSON V. COUGHLIN, SUPRA.

1  4. THE ABILITY OF THE INDIGENT TO PRESENT HIS CLAIM. THE PLAINTIFF IS
2  AN INDIGENT PRISONER WITH NO LEGAL TRAINING, A FACTOR THAT SUPPORTS THE
3  APPOINTMENT OF COUNSEL. WHISENANT V. YUAM, 739 F.2d 160, 163 (4th Cir.
4  1984). IN ADDITION, HE IS CONFINED TO SEGREGATION WITH VERY LIMITED
5  ACCESS TO LEGAL MATERIALS. RAYES V. JOHNSON, 969 F.2d 700, 703-04
6  (8th Cir. 1992).

7  5. LEGAL COMPLEXITY. THE LARGE NUMBER OF DEFENDANTS, ALL OF WHICH HAVE
8  MEDICAL TRAINING AND BACKGROUNDS, AND, THE EXTENT OF MEDICAL ISSUES,
9  PRESENTS COMPLEX LEGAL ISSUES. IN ADDITION, THE PLAINTIFF HAS ASKED FOR
10 A JURY TRIAL, WHICH REQUIRES MUCH GREATER LEGAL SKILL THAN THE
11 PLAINTIFF HAS OR CAN DEVELOP. SEE ABDULLAH V. GUNTER, 949 F.2d 1032,
12 1036 (8th. Cir. 1991); CERT. DENIED: 112 S.Ct. 1995 (1992).

13 6. MERIT OF THE CASE. THE PLAINTIFF'S ALLEGATIONS, IF PROVED, CLEARLY
14 WOULD ESTABLISH A CONSTITUTIONAL VIOLATION. THE ALLEGATIONS OF DENIAL
15 OF MEDICAL CARE AMOUNT TO "INTENTIONALLY INTERFERING WITH THE
16 TREATMENT ONCE PRESCRIBED" WHICH THE SUPREME COURT HAS SPECIFICALLY
17 CITED AS AN EXAMPLE OF UNCONSTITUTIONAL DELIBERATE INDIFFERENCE TO
18 PRISONERS MEDICAL NEEDS. ESTELLE V. GAMBLE, 429 U.S. 97, 105. 97 S.Ct.
19 285 (1976). THE COMPLAINT ALSO ALLEGES MULTIPLE DEPRIVATIONS OF MEDICAL
20 CARE AMOUNTING TO A CLEAR PATTERN OF RECKLESS, NEGLIGENT AND
21 INDIFFERENT ACTS SUFFICIENT TO ESTABLISH DELIBERATE INDIFFERENCE.
22 DEGIDIO V. PUNG, 920 F.2d 525, (C.A. 8 (MINN.) 1990); TODARO V. WARD,
23 565 F.2d 48, C.C.A. 2 (N.Y.) 1977). ON ITS FACE, THEN, THIS IS A
24 MERITORIOUS CASE.

25                         CONCLUSION
26 FOR THE FOREGOING REASONS, THE COURT SHOULD GRANT THE PLAINTIFF'S
27 MOTION AND APPOINT COUNSEL IN THIS CASE.
28

4.

1  I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE
2  AND CORRECT, TO THE BEST OF MY KNOWLEDGE.

4  SIGNED THIS ___27th___ DAY OF ___FEBRUARY___ 2007.

*[signature]*

JOHN DANIEL VILLA JR. # J38001
P.O. BOX 7500
CRESCENT CITY, CA. 95532
PLAINTIFF IN PRO SE.