United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DANIEL VILLA, | No. C 07-1436 WHA (PR) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING MOTION FOR APPOINTMENT OF COUNSEL; REFERRING CASE TO FEDERAL PRO BONO PROJECT** |
| vs. | |
| LINDA ROWE; JENNIFER SWINEY; BHAWANA JAIN; VICKI FOWLER; AUGUSTE REALLON; SHIRLEY KEYS; JOSEPH KRAVITZ; MAUREEN McLEAN, | |
| Defendants. | (Docket Nos. 16, 18, 20) |

**INTRODUCTION**

This is a civil rights case filed by a pro se prisoner. In his amended complaint, plaintiff claims that defendants Dr. Linda Rowe, Dr. Jennifer Swiney, Dr. Bhawana Jain, Nurse Vicki Fowler, Nurse Auguste Reallon, Nurse Shirley Keys, Joseph Kravitz and Maureen McLean, all employees of Pelican Bay State Prison ("PBSP"), were deliberately indifferent to plaintiff's serious medical need for treatment of high cholesterol, an eye infection, and an ear infection. Defendants Dr. Rowe, Dr. Swiney, Nurse Reallon, Nurse Keys, Joseph Kravitz and Maureen McLean move for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law. Plaintiff has opposed the motion.

In support of their summary judgment motion, defendants have submitted a sworn

declaration by Dr. Rowe along with plaintiff's medical records. Plaintiff has submitted additional medical records and other exhibits in support of his opposition. Although plaintiff has not submitted a sworn declaration, his amended complaint is verified and as such is treated as a sworn affidavit opposing defendant's motion to the extent it sets forth matters based on his personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald,* 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as sworn affidavit opposing summary judgment motion).

For the reasons set out below, defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**, and the case is referred to the Federal Pro Bono Project to locate pro bono counsel to be appointed for plaintiff.

## STATEMENT

The following facts are undisputed except where indicated.

Plaintiff has been in the custody of the California Department of Corrections and Rehabilitation since 1994 and has been in the CDCR's "Chronic Care" program since 1995 (Amend. Compl. ¶¶ 2, 4). In July 2005, plaintiff was transferred to PBSP from New Folsom Prison (*id.* ¶ 6). On August 19, 2005, Dr. Rowe conducted a Chronic Care intake assessment of plaintiff at PBSP (*id.* ¶ 7).

**A.    CHOLESTEROL TREATMENT**

At the intake assessment on August 19, 2005, plaintiff told Dr. Rowe that he had high cholesterol, that he had an allergy to "statin" drugs, and that doctors at New Folsom Prison had effectively treated his cholesterol levels with 500mg of niacin twice daily (Amend. Compl. ¶¶ 7-13; Opp. Br., Exh. A, Medical Records, 1; Rowe Decl. Exh. B at 491). Plaintiff's cholesterol had last been tested approximately seven months earlier, on January 25, 2005, at New Folsom, at which time his cholesterol was 217 and his triglycerides were 179 (Rowe Decl. Exh. B at 491). Dr. Rowe prescribed Atenolol for heart disease and conducted a general examination, but she did not order tests or medication for plaintiff's cholesterol (*id.* 491, 497; Amend. Compl. ¶ 14).

2

In October 2005, plaintiff had an appointment with a psychiatrist Dr. Yancha[1], from whom he requested blood tests for his cholesterol (Amend. Compl. ¶ 15). In February 2006, plaintiff filed an inmate appeal complaining that PBSP medical staff had failed to draw his blood (Amend. Compl. ¶ 16).[2] On March 10, Dr. Swiney ordered a lipid panel of plaintiff's blood (Rowe Decl. Exh. B at 481). Medical staff drew plaintiff's blood on March 29 and March 30 (Amend. Compl. ¶ 18). Blood tests revealed that on March 29 plaintiff's cholesterol level was 279 and his triglycerides were 340, and that on March 30 his cholesterol level was 297 and his triglycerides were 263 (Opp. Br., Exh. A, Medical Records, 4-5). On April 12, Dr. Swiney saw plaintiff regarding the results of the blood tests, at which time plaintiff told Dr. Swiney that he could not take statins (Amend. Compl. ¶¶ 22-24). Dr. Swiney decided to place plaintiff on Lipitor, a statin (Rowe Decl. Exh. B at 469, 472).

On April 19, plaintiff met with Dr. Jain (Amend. Compl. ¶ 27). Plaintiff states that he informed Dr. Jain that he was experiencing pain from gas and bloating (Amend. Compl. ¶¶ 27-29), although Dr Jain indicated that plaintiff did not report having any side effects at that time (Rowe Decl. Exh. B at 466). Plaintiff explained his prior problem with statins to Dr. Jain and requested to be placed on niacin instead (Amend. Compl. ¶ 30; Rowe Decl. Exh. B at 466). Dr. Jain advised plaintiff to continue with statin Lipitor at least until the next round of blood tests and to tell medical staff of any worsening symptoms (Amend. Compl. ¶¶ 31-32).

On April 25, plaintiff sent Nurse Fowler a written complaint regarding the painful side effects he was experiencing (*id.* ¶ 33). Nurse Fowler sent a written response that a doctor would see plaintiff in one week (*id.* ¶ 34). On April 27, Nurse Fowler came to plaintiff's housing section on an unrelated matter (*id.* ¶ 36). Plaintiff asked Nurse Fowler to come to his cell, but Nurse Fowler refused (*id.* ¶¶ 37-38). Plaintiff yelled after Nurse Fowler and told her that he was going to stop taking Lipitor because he could no longer tolerate it (*id.* ¶ 39).

---

[1]The parties have not provided Dr. Yancha's first name, nor is her first name indicated in the exhibits.

[2]All further dates correspond to the year 2006, unless otherwise indicated.

3

1    Five days later, on May 2, plaintiff's blood was drawn pursuant to an order by Dr. Jain
2 (*id.* ¶ 42; Opp. Br., Exh. A, Medical Records, 6). Plaintiff states that the blood tests indicated
3 liver damage (Amend. Compl. ¶ 43). Defendants present a declaration by Dr. Rowe, however,
4 stating that plaintiff's medical records do not indicate any significant liver damage, that plaintiff
5 had only minimally elevated liver enzyme levels, and that plaintiff's liver was fully functional
6 as of April 2009, which strongly indicates that plaintiff has never suffered liver damage (Rowe
7 Decl. ¶ 39, Exh. B at 450). Because of plaintiff's "slightly elevated" liver function, Dr. Jain
8 switched plaintiff from Lipitor to niacin (*id.* 133, 450), apparently at a dosage of 1000 mg twice
9 daily (Amend. Compl. ¶ 46; Rowe Decl. Exh. B at 133). On June 26, Dr. Jain saw plaintiff
10 regarding his switch to niacin (Rowe Decl. Exh. B at 459-460). The medical records indicate
11 that plaintiff was tolerating the niacin well (*ibid.*) Plaintiff, however, states that the niacin
12 caused him to break into hives and uncontrollable itching (Amend. Compl. ¶ 47). On August
13 17, Dr. Jain adjusted plaintiff's niacin prescription, and noted plaintiff's concern that he had
14 liver "damage" from the Lipitor (Rowe Decl. Exh. B at 450). Dr. Jain told plaintiff that they
15 would order liver tests, to which plaintiff agreed (*ibid.*). Dr. Jain also noted that when earlier
16 liver tests had demonstrated some problems in the liver, specifically a "slightly elevated" liver
17 function, plaintiff's medication had been switched from Lipitor to niacin (*ibid.*). Plaintiff told
18 Dr. Jain that he was tolerating the niacin "ok" (*ibid.*).

19    On August 19, Nurse Kirkpatrick evaluated plaintiff for reported itching (Amend.
20 Compl. ¶¶ 49-50). Nurse Kirkpatrick called an unidentified doctor who told plaintiff to stop
21 taking niacin and that plaintiff could be seen by a doctor on August 24 (*id.* ¶¶ 51-52). Plaintiff
22 did not see Dr. Jain until September 19, at which time Dr. Jain discontinued the niacin (*id.* ¶
23 53). Plaintiff states that Dr. Jain placed plaintiff on Zocor, a statin, despite plaintiff's expressed
24 fear of complications, that he suffered almost immediate bloating and stomach pain, and that he
25 informed Nurse Reallon "days" later that the Zocor was "tearing his stomach up" (*id.* ¶¶ 54-58).
26 The medical records indicate, however, that Dr. Jain prescribed Gemfibrozil, which is not a
27 statin, and not Zocor at the September 19 appointment (Rowe Decl. Exh. B at 176, 440-41).
28 Plaintiff had another follow-up appointment on October 24, at which time Dr. Jain did place

4

1 plaintiff on Zocor and told plaintiff to contact medical staff if he experienced any adverse side
2 effects (*id.* 417-419). Plaintiff had a follow-up appointment on November 8, at which time
3 plaintiff said that he was tolerating the Zocor well, but that he was experiencing heartburn (*id.*
4 409). Both parties agree that Nurse Reallon ordered heartburn medication in response to
5 plaintiff's complaints about the side effects (*ibid.*; Amend. Compl. ¶ 60).

6 By November 12, plaintiff filed a medical request form seeking attention for the side
7 effects of the Zocor (Comp. ¶¶ 61-62). On November 14, plaintiff had an appointment with Dr.
8 Jain (Rowe Decl. Exh. B at 406). Plaintiff told Dr. Jain that he had stopped taking Zocor
9 because of the adverse symptoms and that he wanted to start Gemfibrozil (*ibid.*). At that time,
10 Dr. Jain placed plaintiff on Gemfibrozil and a small dose of niacin (*id.* 408).

**B.  EYE TREATMENT**

In October 2006, plaintiff developed a sty in his left eye (Amend. Compl. ¶ 65). On October 2, Nurse Reallon was informed of plaintiff's sty (Rowe Decl. Exh. B at 437). Plaintiff states that Nurse Reallon refused to evaluate him (Amend. Compl. ¶ 66). Plaintiff also states that Dr. Jain prescribed antibiotics on October 5, after his eye had swollen shut and was bleeding (*id.* ¶ 67-69). The medical records indicate that on October 3, Dr. Jain examined plaintiff's eye, prescribed antibiotics, and advised plaintiff to use warm compresses (Rowe Decl. Exh. B at 433-436). The medical records further show a follow-up appointment on October 5, at which plaintiff reported that his eye was much better and Dr. Jain instructed him to continue with the antibiotics and warm compresses (Rowe Decl. Exh. B at 431-432).

On October 12, plaintiff woke up with an infection in his left nostril and upper lip (Amend. Compl. ¶ 70). On October 13, Nurse Reallon went to plaintiff's cell to follow up on the eye infection, and plaintiff told her that his eye had healed but that the infection had moved to his nose and upper lip (Amend. Compl. ¶¶ 71-74; Opp. Br., Exh. A at 20). Plaintiff states that Nurse Reallon refused to treat him (Amend. Compl. ¶ 75). In the medical records, Nurse Reallon indicated simply that plaintiff's eye was all better and that no further monitoring was needed (Rowe Decl. Exh. B at 429-430). According to plaintiff, by the end of the day, the left side of his face became swollen with abscesses (Amend. Compl. ¶ 76). He states that he

5

experienced pain and headaches, as well as problems eating and sleeping and that he complained of these problems to Nurse Keys every evening from October 13 to October 16 (*id.* ¶¶ 77-79). On October 16, plaintiff was seen by Nurse Reallon for the nose and lip infection (*id.* ¶ 80). Nurse Reallon scheduled plaintiff for an urgent appointment that day at the Correctional Treatment Center ("CTC") (*id.* ¶ 81; Rowe Decl. Exh. B at 428).

Plaintiff walked one mile to CTC (Amend. Compl. ¶ 82), where Dr. Williams examined him and prescribed Bactrim, a sulpha drug (Rowe Decl. Exh. B at 425; Opp. Br., Exh. A, Medical Records, 7). Plaintiff states that he experienced an allergic reaction to the Bactrim (Amend. Compl. ¶ 88). Plaintiff also states that he was informed at CTC that he had a Methicillin Resistant Staphylococcus Aureus ("MRSA") infection in his face (*id.* ¶ 84). Dr. Williams' notes about the exam do not mention an MRSA infection (Opp. Br. Exh. A, Medical Records, 7), but responses to plaintiff's inmate appeals do (Amend. Compl., Exh. D at 4). Plaintiff states that he was denied daily showers for five days as well as linen and clothing exchange in violation of PBSP's MRSA precautions (Amend. Compl. ¶ 89; Opp. Br., Exh. D).

On October 24, plaintiff met with Nurse Reallon and Dr. Jain for a follow-up appointment for the infection in his face (Rowe Decl. Exh. B at 417). At that time, plaintiff indicated that his face had healed (*ibid.*).

### C.   EAR TREATMENT

At the August 19, 2005 intake assessment, plaintiff complained to Dr. Rowe of dizziness, pressure, and impaired hearing in his right ear (Amend. Compl. ¶ 93). Plaintiff states that Dr. Rowe found an ear infection, but the records from that examination state that Dr. Rowe examined plaintiff's ears, made no mention of an ear infection, and simply noted a "dull TM," *i.e.*, a dull tympanic membrane, in his right ear (*id.* ¶ 94; Opp. Br., Exh. A, Medical Records, 1).

On February 3, 2006, plaintiff requested ear drops because he believed that he had an ear infection (Rowe Decl. Exh. B at 489). On February 4, plaintiff was seen at the infirmary regarding his ear complaint, was directed to use warm compresses on his ears, and was given a prescription for nasal spray (*id.* 487-88). On March 10, Dr. Swiney saw plaintiff regarding the ear complaint and prescribed Bactrim and more nasal spray (Rowe Decl. Exh. B at 476-481).

6

At a later examination, Dr. Jain also prescribed more ear medication (Amend. Compl. ¶¶ 101-102). Plaintiff states that the medical staff allowed this medication to run out (*id.* ¶ 99). The medical records indicate that plaintiff was seen by medical staff for complaints about his ear at least eleven times during 2006, that his nasal spray prescription was refilled on five different occasions, and that from February 4 to the end of 2006, plaintiff was never without a prescription for nasal spray for more than three days (Rowe Decl. ¶¶ 7-9, 11-13, 15-17, 23, 26 & Exh. B at 126-153).

### D.  ADMINISTRATIVE APPEALS

Plaintiff's claims against defendants Kravitz and McLean are based on their responses to plaintiff's administrative appeals. Plaintiff filed five administrative appeals between June 20, 2006 and February 26, 2007 regarding the medical care discussed above (Amend. Compl. Exs. A-E). Kravitz and McLean responded to three of these appeals at the second level of review (Amend. Compl. Exh. A at 38-39, Exh. C at 54-55, Exh. D at 4).[3] In all three appeal responses, Kravitz and McLean granted treatment for plaintiff (*ibid.*).

## ANALYSIS

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Ibid.*

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the moving party has

---

[3] Because plaintiff's Exhibit D does not contain page numbers, the pages are numbered herein in the order in which they appear.

met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial *Ibid*. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Ibid.*

### B.   PLAINTIFF'S EIGHTH AMENDMENT CLAIMS

Plaintiff's amended complaint claims that defendants Dr. Rowe, Dr. Swiney, Dr. Jain, Nurse Fowler, and Nurse Reallon failed to provide plaintiff with adequate medical care for his high cholesterol. Plaintiff also claims that Nurse Keys and Nurse Reallon failed to provide plaintiff with adequate medical care for an eye infection, and that Dr. Rowe failed to provide plaintiff with adequate medical care for an ear infection. Finally, plaintiff claims that Kravitz and McLean were made aware of these ongoing medical needs by plaintiff's administrative appeals and failed to act upon them.

Defendants contend in their motion that they are entitled to summary judgment because on the undisputed facts they did not violate plaintiff's Eighth Amendment rights. Plaintiff contends that he is entitled to summary judgment because the undisputed facts show that such a violation occurred.

#### 1.   Medical Care Standard

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Ibid.* A prison official is deliberately indifferent if she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Neither negligence nor gross negligence will constitute deliberate indifference. *Id.* at 835-36 & n.4 (1994); *Estelle*, 429 U.S. at 106. A mere delay in medical

8

1  treatment does not rise to the level of a constitutional violation without medical evidence of
2  detrimental effect from the delay. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996);
3  *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002) (doctor entitled to summary judgment
4  where plaintiff presented no evidence that delays were within the doctor's control or contributed
5  to plaintiff's injuries).

6  "A difference of opinion between a prisoner-patient and prison medical authorities
7  regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337,
8  1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical
9  opinion as to the need to pursue one course of treatment over another is insufficient, as a matter
10 of law, to establish deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1058-60 (9th Cir.
11 2004). In order to prevail on a claim involving choices between alternative courses of
12 treatment, a plaintiff must show that the course of treatment the doctors chose was medically
13 unacceptable under the circumstances and that he or she chose this course in conscious
14 disregard of an excessive risk to plaintiff's health. *Ibid.*

### 2. Cholesterol Treatment

16 Plaintiff claims that defendants Dr. Rowe, Dr. Swiney, Dr. Jain, Nurse Fowler, and
17 Nurse Reallon were deliberately indifferent to his need for treatment for high cholesterol.

18 Plaintiff's sworn statement in his verified amended complaint and the medical records
19 indicate that he told Dr. Rowe at the intake examination on August 19, 2005 that he had high
20 cholesterol, but she did not prescribe medication or order a cholesterol test. When his
21 cholesterol levels had last been tested, approximately seven months earlier, in January 2005, his
22 cholesterol was 217 and his triglycerides were 179. Blood tests revealed that in March 2006,
23 approximately six months after the appointment with Dr. Rowe during which time plaintiff was
24 not given cholesterol medication, his cholesterol and triglyceride levels had risen substantially,
25 to between 279 and 297 for his cholesterol and between 263 and 340 for his triglycerides. A
26 reasonable inference can certainly be drawn from this evidence that Dr. Rowe was deliberately
27 indifferent to plaintiff's serious medical needs when she failed to prescribe cholesterol
28 medication or provide other medical treatment for his high cholesterol at the intake examination

9

on August 19, 2005.

Plaintiff further complains that after his high cholesterol was confirmed by tests in March 2006, defendants Dr. Swiney and Dr. Jain prescribed statins and other medication that they knew plaintiff could not tolerate and that caused him to suffer substantially painful side effects. Although plaintiff informed Dr. Swiney that he was allergic to statins in April 2006, as noted in plaintiff's medical records, Dr. Swiney nevertheless prescribed Lipitor, a statin. Shortly thereafter, Dr. Jain denied plaintiff's request to switch to niacin, which had worked previously, and instead advised plaintiff to continue with the statin Lipitor even though plaintiff was experiencing pain, gas and bloating from taking it. When Dr. Jain finally prescribed niacin, he did so at a higher dosage than plaintiff had received previously, and it caused plaintiff to suffer hives and itching. Dr. Jain subsequently switched plaintiff to Zocor, another statin, which predictably also caused painful side effects. Although plaintiff ultimately received Gemfibrozil, which is not a statin, in November 2006, and which plaintiff apparently tolerated well, there is evidence that since April 2006, Dr. Jain and Dr. Swiney had prescribed statins and other medications that caused painful and adverse side effects despite their knowledge that plaintiff had a history of not tolerating such medication well. An inference can reasonably drawn from this evidence that in so doing, Dr. Swiney and Dr. Jain were deliberately indifferent to plaintiff's serious medical needs.

Plaintiff complains that Nurse Fowler and Nurse Reallon did not adequately respond to his complaints about the statins. As nurses, they did not have the power to prescribe new medication for plaintiff or to go against the doctors' orders prescribing such medication. In addition, when he complained to them, in June and October 2006 respectively, he received appointments within a week or two weeks with the doctors who had the authority to discontinue or change plaintiff's medications. This evidence, even when all reasonable inferences are drawn in plaintiff's favor, does not establish that defendants Nurse Fowler and Nurse Reallon were deliberately indifferent to need for treatment for high cholesterol.

On this record, there is a genuine issue of material fact as to whether defendants Dr. Rowe, Dr. Jain, and Dr. Swiney were deliberately indifferent to plaintiff's need for medical

1  treatment for his cholesterol levels.  There is no genuine issue of material fact on this issue,

2  however, with respect to defendants Nurse Reallon and Nurse Fowler.  Consequently, Nurse

3  Fowler and Nurse Reallon are entitled to judgment as a matter of law on this claim, but Dr.

4  Rowe, Dr. Swiney and Dr. Jain are not.

### 3.   Eye Treatment

While an eye infection may create a "serious" medical need, plaintiff has made no showing that defendants were deliberately indifferent to this medical need.  Plaintiff states that Nurse Reallon refused to evaluate him on October 2 and 12, and that Nurse Keys did not evaluate him when she visited him on her nightly rounds on October 13, 14, and 15.  The medical records establish that plaintiff was seen by doctors and received treatment for his condition on October 3, 5, 13, and 16.  As such, plaintiff received treatment within three days or less of each of his requests.  There is no evidence that treatment for plaintiff's condition was medically required more quickly.

Moreover, there is no evidence that the treatment he received was medically inappropriate.  The medical records demonstrate that when plaintiff was first seen by a doctor, Dr. Jain on October 3, Dr. Jain prescribed antibiotics for his condition.  Plaintiff's eye infection had improved by October 5, at his follow-up visit, and had cleared up by October 13.  After plaintiff apparently suffered a second infection in his nose and lip on October 12, he received an urgent appointment at a clinic, where Dr. Williams examined him and prescribed further medication (Bactrim) that cleared up this infection.  This record does not indicate ineffective medical care, let alone deliberate indifference to his medical needs.

Plaintiff states that he experienced an "allergic reaction" to the Bactrim prescribed by Dr. Williams for his infection, but there is no medical evidence to support this assertion. Indeed, the medical records establish that the medication cleared up his condition.  Moreover, even if plaintiff suffered any adverse side effects from the medication, Dr. Williams is not a defendant, and plaintiff has not asserted that he informed any defendants of any adverse reaction to the medication.

Plaintiff asserts that he had a MRSA infection in his face, and that as a result, he was

11

treated with deliberate indifference when he was denied daily showers and linen exchange for five days in violation of PBSP's MRSA precautions. Plaintiff offers no evidence that any of the defendants, who are doctors and nurses, were involved in any of the decisions regarding distributing linens or providing showers for inmates generally or for plaintiff in particular.

Finally, plaintiff also complains that he was made to walk one mile for his appointment with Dr. Williams on October 16 (Amend. Compl. ¶ 82). There is no evidence that walking a mile to an appointment impinged on any medical condition from which plaintiff suffered.

In sum, there is no genuine issue of material fact as to whether defendants Nurse Reallon or Nurse Keys responded with deliberate indifference to plaintiff's eye infection, and they are entitled to judgment as a matter of law on this claim.

### 4. Ear Treatment

Plaintiff claims that Dr. Rowe was deliberately indifferent to plaintiff's ear pain and hearing loss. The evidence is undisputed that Dr. Rowe's only involvement with plaintiff's ear occurred on August 19, 2005, at the intake evaluation. At the exam, plaintiff complained of dizziness and impaired hearing, which plaintiff attributes to an ear infection. There is no evidence to support plaintiff's opinion that he had an ear infection, however. The medical records indicate that Dr. Rowe examined plaintiff's ears and found no infection; he simply found that plaintiff had a "dull TM," i.e. tympanic membrane in his right ear (Opp. Br., Exh. A, Medical Records, 1). A difference of opinion between a plaintiff and his doctor as to whether he had an ear infection does not create a genuine issue of fact as to whether there was any ear infection for Dr. Rowe to treat.

When plaintiff complained of ear problems in February 2006, he was seen eleven more times during 2006 and was prescribed nasal spray for his ear complaints on five occasions. Plaintiff complains that medical staff allowed his medication to run out, but plaintiff has not made any showing that Dr. Rowe had any knowledge or involvement in the treatment of plaintiff's ear after the intake examination. Furthermore, the medical records establish that plaintiff was never without a prescription for nasal spray for more than three days. Plaintiff has made no showing that delays of three days in refilling the prescription were medically

12

unacceptable or caused an unreasonable risk of harm to plaintiff.

While hearing loss may constitute a serious medical need, plaintiff has not shown that Dr. Rowe was deliberately indifferent to it. There is no evidence as to what treatment Dr. Rowe could have or should have provided to plaintiff for the "dull" tympanic membrane in his right ear, or that plaintiff suffered any harm to his hearing as a consequence of Dr. Rowe's failure to provide such treatment.

As there is no genuine issue of material fact as to whether Dr. Rowe responded with deliberate indifference to plaintiff's ear condition and hearing loss, Dr. Rowe is entitled to judgment as a matter of law on this claim.

### 5. Administrative Appeals

Plaintiff's claims against defendants Kravitz, a Correctional Counselor, and McLean, a Heath Care Manager, are based on their responses to three of plaintiff's administrative appeals, each at the second level of review. The first two concerned the cholesterol medication he was receiving and its adverse side effects, and the last concerned the treatment described above for the infection in his eye and face (Amend. Compl. Exh. A at 38-39, Exh. C at 54-55, Exh. D at 4).[4]

To begin with, prison officials are not generally liable under 42 USC § 1983 for their responses to administrative appeals because there is no constitutional right to prison administrative appeals in the first place. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

In addition, the responses by Kravitz and McLean to plaintiff's appeals do not constitute deliberate indifference to his medical needs. With respect to the appeals regarding the cholesterol medication, Kravitz and McLean are not doctors and thus did not have the authority, training or expertise to question the treating physicians' medical decisions as to what medication was appropriate plaintiff's medical condition, to order prescriptions for different medications, or to interfere with the doctors' orders. All Kravitz and McLean could do was to provide plaintiff with additional doctor appointments to address plaintiff's ongoing concerns,

---

[4]Because plaintiff's Exhibit D does not contain page numbers, the pages are numbered herein in the order in which they appear.

13

which is what they plaintiff received. As for the appeal regarding the treatment for his eye and face infection, his claims against Kravitz and McLean are derivative of those against the other defendants for how they treated the infection. For the reasons discussed above, there is no genuine issue of fact as to whether the medical care plaintiff received from the other defendants for his eye and face infection violates the Eighth Amendment, and Kravitz and McLean cannot be liable for violating plaintiff's right to adequate medical care when the claim against them is based on the same facts.

For these reasons, summary judgment will be granted in favor of Kravitz and McLean.

### C.   UNSERVED DEFENDANTS

Defendants Dr. Jain and Nurse Fowler were not served and therefore have not participated in the motion for summary judgment filed by the other defendants. As discussed above, there is no genuine issue of fact as to whether Nurse Fowler was deliberately indifferent to plaintiff's medical needs. Accordingly, summary judgment will be granted in favor of Nurse Fowler. *See Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery*, 44 F.3d 800, 803 (9th Cir. 1995) (affirming district court's granting summary judgment in favor of nonappearing defendant, where plaintiff, in response to motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing defendant).

As discussed above, summary judgment is not granted in favor of Dr. Jain. Within sixty days of the date pro bono counsel is appointed to represent plaintiff in this matter, as described below, plaintiff shall effectuate service upon Dr. Jain.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is defendants Dr. Rowe, Dr. Swiney, Nurse Reallon, Nurse Keys, Joseph Kravitz and Maureen McLean (docket number 20) is **GRANTED IN PART AND DENIED IN PART.** Summary judgment is **DENIED** as to plaintiff's Eighth Amendment claims regarding the medical treatment he received for high cholesterol against defendants Dr. Linda Rowe, Dr. Swine and Dr. Jain. Summary judgment is **GRANTED** on all other claims.

14

This matter is ready for trial on the claims upon which defendants' have been denied summary judgment. The plaintiff having requested and being in need of counsel to assist him/her in this matter, and good and just cause appearing, his motion for appointment of counsel (docket number 18) is **GRANTED**. Plaintiff shall be referred to the Federal Pro Bono Project for location and of pro bono counsel. Upon an attorney being located to represent plaintiff, that attorney shall be appointed as counsel for plaintiff in this matter until further order of the court. All proceedings in this action are stayed until four weeks from the date an attorney is appointed to represent plaintiff in this action.

Defendants' motion to modify the briefing schedule (docket number 16) is **GRANTED**.

**IT IS SO ORDERED.**

Dated: December   9  , 2009

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\CR.07\VILLA1436.MSJ.wpd