1  James M. Wood (SBN 58679)
   email: JMWood@reedsmith.com
2  Phillip H. Babich (SBN 269577)
   email: PBabich@reedsmith.com
3  REED SMITH LLP
   101 Second Street, Suite 1800
4  San Francisco, CA 94105
   Telephone:    +1 415 543 8700
5  Facsimile:    +1 415 391 8269

6  Attorneys for Plaintiff
   John D. Villa, Jr.
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10 | JOHN D. VILLA, JR.,                          | No.: C07-01436 WHA |
11 |                  Plaintiff,                  |                    |
12 |         vs.                                  | **PETITION FOR WRIT OF HABEAS CORPUS AD TESTIFICANDUM AND DECLARATIONS OF PHILLIP H. BABICH AND JOHN VILLA** |
13 | LINDA ROWE, JENNIFER SWINEY, and BHAWNA JAIN, | |
14 |                                              | Date:       February 2, 2012 |
15 |                  Defendants.                 | Time:       8:00 a.m.<br>Courtroom:  9 |
16 |                                              | Trial Date: February 21, 2012 |
17 |                                              | Time:       7:30 a.m.<br>Place:      Courtroom 9<br>Judge:      Hon. William Alsup |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## I. INTRODUCTION

John Daniel Villa, Jr., inmate no. J-38001, is a necessary and material party in the proceedings in this case. Mr. Villa is confined in Ironwood State Prison ("Ironwood") in Blythe, California. He is the Plaintiff in this matter. Because Mr. Villa is a former member of the Mexican Mafia his life is in danger each time he is exposed to the general population of the California Prison System. The Mexican Mafia assassinate former gang members, such as Mr. Villa, at any opportunity. For that reason, Plaintiff respectfully requests that the Court issue a Writ for his transfer to San Quentin State Prison, for purposes of his February 21, 2012 trial with a condition that he is transported without members of the general prison population in the same vehicle. Additionally, Plaintiff requests that the Court order that his transfer may not occur until after February 17, 2012 because Mr. Villa has a parole board hearing that day at Ironwood.

## II. FACTUAL BACKGROUND

This is a civil rights claim brought by a former prisoner of Pelican Bay State Prison ("Pelican Bay") for damages caused by the deliberately indifferent care provided by three health care providers. For more than a year, each of the Defendants, knowing of Plaintiff's need for treatment for a serious medical condition, deliberately disregarded this need by either refusing to treat it or giving him a therapy they knew caused him excruciating pain. In doing so they violated his civil rights under 42 U.S.C. § 1983 and *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

Mr. Villa's criminal history is known to the Court. During his incarceration Mr. Villa was an active member of a Mexican Mafia. However, while Mr. Villa was at Pelican Bay he decided to leave his gang and began a series of debriefings and programs. On August 23, 2007, a Committee at Pelican Bay found that:

- o Mr. Villa had been validated as an affiliate of the" Mexican Mafia";
- o He had completed the first phase of the debriefing process;

- Contrary to regulations he was endorsed for "an intensive curriculum designed to include education classes, personal growth, conflict resolution techniques and physical education;"

- "The ultimate goal of this program is to reintegrate inmates that dropout of prison gangs into a General Population facility, with sensitive needs noted."

(Declaration of Phillip H. Babich ("Babich Decl."), Exhibit 1.

In 2008 Mr. Villa successfully completed the second phase of the program: "Committee notes that the safety and security of [Mr. Villa] and the Institution would benefit from his being considered for Sensitive Needs placement."  Babich Decl., Exhibit 2.

In 2009, a prison committee evaluated Mr. Villa's request for a prison transfer to be closer to his family.  This was granted.  "This is based on his willingness to debrief, his willingness to walk away from the prison gang, mentality and politics, and his positive programming while housed in THU.[1]"  Babich Decl., Exhibit 3.

Upon the completion of his debriefing Mr. Villa qualified for special needs protection:

> Upon completion of the debriefing process, the inmate shall be housed in a facility commensurate with the inmate's safety needs.  In the absence of safety needs, the inmate shall be housed in a facility consistent with his or her classification score.  15 CCR § 3378.1(d)

The Committee continued:  "[The committee] also notes that [Mr. Villa] has two confidential enemies housed at [the transfer prison]." [Id]

For three years Mr. Villa has been at risk for retaliation by Mexican Gang members for his decision.  The Mexican Mafia is the most violent gang faction in California, credited with at least

---

[1] The Transitional Housing Unit (THU) shall provide a program of observation to evaluate that an inmate has successfully disassociated from prison gang activity and is capable of programming in a general population (GP) setting.  Inmates must have completed the debriefing process from a validated prison gang, as described in section 3378.1, in order to be placed into the THU. Placement into the THU can be from either a Security Housing Unit or from GP.  THU inmates shall be housed separately from other GP inmates due to potential safety concerns." 15 CCR 3378.1

300 murders per year outside prison on orders that were issued by the Mafia from inside prison. Declaration of John D. Villa in Support of Petition for Writ of Habeas Corpus Ad Testificandum ("Villa Decl."), ¶ 3. Because Mr. Villa is a validated former gang member the California Department of Corrections and Rehabilitation ("CDCR") has classified him as a Sensitive Needs Yard ("SNY") inmate. This classification requires that the CDCR keep Mr. Villa separated from the general prison population at all times, including during his transportation. If the CDCR does not keep Mr. Villa away from the general prison population he will be subject to deadly retaliation from the Mexican Mafia. Villa Decl., ¶ 5.

However, during Mr. Villa's transportation from Ironwood State Prison ("Ironwood") to San Quentin State Prison ("San Quentin") for his last trial date in October 2011, the CDCR did not follow protocols for transfer of an SNY inmate and prison officials placed Mr. Villa on a CDCR bus with the general population. Villa Decl., ¶ 6. This placed Mr. Villa in grave danger. Even though there is a fence on the bus that separates validated gang drop-outs who are SNY inmates from the general population, this is not enough to protect Mr. Villa because the general population can see him when the guards call out his CDCR number, name, and SNY classification. That notifies all Mexican Mafia associates of his presence. Villa Decl., ¶ 8.

Guards at San Quentin compounded the threat to Mr. Villa when they took him off the bus upon his arrival at the prison. One of the guards asked another of the inmates who was on the bus with Mr. Villa if he was an active gang member. The inmate said he was. The guard then instructed Mr. Villa to follow him. The guards brought over three other inmates, who were also active gang members, to join Mr. Villa. The guards took off the inmates' handcuffs and shackles. Then, they told them to strip. At that point the guard asked Mr. Villa if I he an SNY inmate, in front of the three active gang members. Mr. Villa was required to answer affirmatively. That placed him in grave danger. Mr. Villa believes that the only reason the other inmates did not attack and, possibly kill him, was because they were white and he is Latino. Villa Decl., ¶ 9.

Danger to Mr. Villa did not end there. When he arrived at Chino State Prison ("Chino"), during his transportation back to Ironwood, the guards placed him and the only other SNY inmate who was riding the bus in a holding cell. A corrections officer came to do a housing interview, which is where the officer asks the inmate if he is an SNY and who he can share a cell with. Mr. Villa told the officer that he was out-to-court for a lawsuit. According to Mr. Villa, the officer said "good luck," and then walked away. About an hour later officials at Chino sent Mr. Villa to a unit to be housed with active Mexican Mafia associate. Mr. Villa told the officer that he was an SNY inmate and he asked the officer whether he was supposed to be there. The officer told him that he was not. Mr. Villa believes that if he had not asked the officer whether he was supposed to be in that unit he would have been killed in the cell that night by the Mexican Mafia. The officer, instead, placed Mr. Villa in Administrative Segregation ("Ad Seg") because he said there were no more SNY bunks. Mr. Villa spent three days in Ad Seg. Mr. Villa later learned from other SNY inmates who were on the bus back to Ironwood that there were plenty of other bunks available for more SNY inmates at Chino. Villa Decl., ¶ 10.

It is fortunate that the Mexican Mafia did not reach Mr. Villa. He does not wish to take his chances again.

### III.  LEGAL ARGUMENT

A district court has authority to issue a Writ of Habeas Corpus Ad Testificandum (the "Writ") if the Court determines that "it is necessary to bring [the inmate] into court to testify or for trial." 28 U.S.C. § 2241(c)(5). In determining whether a Writ should issue, the court considers whether "the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and safekeeping, and whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted." *Wiggins v. County of Alameda*, 717 F. 2d 466, 468 n. 1 (9th Cir. 1983) (citing *Ballard v. Spradley*, 557 F. 2d 476, 480 (5th Cir. 1977). A court also has discretion to attach conditions to the Writ under certain circumstances. *Id*. at 469 (holding that U.S. magistrate did not

abuse his discretion by ordering State to bear all costs associated with securing the presence of state inmate-plaintiff at the trial of his federal civil rights suit).

Here, Mr. Villa's presence will substantially further resolution of the case because his testimony is indispensable in establishing whether the Defendants were deliberately indifferent to his serious medical needs. Mr. Villa is a necessary and material party in the proceedings in this case. He is the Plaintiff in this matter. There are no other witnesses to his treatment at Pelican Bay other than the Defendants themselves. Additionally, Mr. Villa poses no security risk because he has been a model prisoner for more than six years with no disciplinary actions brought against him, not even for minor rule violations. As for costs to the State, Plaintiff does not have information to state whether the expense of his transportation and safekeeping would be unduly expensive; however, Mr. Villa has been transported to San Quentin and housed there on two other occasions for previous trial dates and the CDCR has not contended that the costs were so excessive that Mr. Villa's transfer was unwarranted. Lastly, staying the suit till Mr. Villa's release would be prejudicial to his case because Mr. Villa is serving a life sentence and although there is a possibility of parole there is no guarantee that he will ever be released.

Moreover, implicit in finding that it is necessary that a prisoner appear at trial to testify is that he be safely transported. The Court should exercise its discretion and order the CDCR to transport Mr. Villa from Ironwood to San Quentin and back, for purposes of his trial date of February 21, 2012, on a bus, or other suitable vehicle, without inmates from the general population. Mr. Villa's status as a validated former gang member and his classification as an SNY inmate places his life in grave danger each time he is exposed to inmates from the general population. When the CDCR previously transported Mr. Villa to San Quentin for earlier trial dates he was placed in close proximity with current gang members, which threatened his life. In order for Mr. Villa to be guaranteed his safety so that he can appear, as is necessary, at his civil rights trial, the Court should specify in the Writ that CDCR officials are to transport Mr. Villa, for purposes of his trial, individually or with other SNY inmates only.

Additionally, because Mr. Villa has a parole board hearing on February 17, 2012 at Ironwood, the Court should specify in its Writ that Mr. Villa's transfer to San Quentin for purposes of this trial shall not occur before February 18, 2012.

## IV.  CONCLUSION

The Court should exercise its discretion to order the CDCR to transport Mr. Villa individually or with other SNY inmates only in order to guarantee that he arrives safely for his civil rights trial and is returned to Ironwood afterwards without his life being threatened by the Mexican Mafia.  This condition is warranted in light of Mr. Villa's status as a validated former gang member and the CDCR's failure during his previous transfer to and from San Quentin to keep him safely segregated from the general population even though CDCR officials are required to do so.  Plaintiff respectfully requests that the Court issue the Writ with this condition, and the condition that the transfer may not occur before February 18, 2012 so Mr. Villa can attend his parole board hearing on February 17, 2012.

DATED: January 26, 2012

REED SMITH LLP

By    /s/ Phillip H. Babich
    Phillip H. Babich (SBN 269577)
    Attorneys for Plaintiff